[Civil No. 1979.   Filed June 28, 1922.]

[207 Pac. 1089.]

## H. KJERSCHOW and BIRGER LIE, Appellants, v. HUGH R. DAGGS, Appellee.

1. PRINCIPAL AND AGENT—GENERAL ALLEGATION OF AGENCY IS SUFFICIENT WITHOUT AVERRING THAT THE AGENT HAD AUTHORITY.— Where an agency is alleged, a general allegation is sufficient without averring that the agent had authority to act in the premises; that being regarded as an averment of a conclusion of law or an unnecessary repetition.

2. BROKERS—AUTHORITY TO SIGN CONTRACT AUTHORIZING OR EMPLOYING A BROKER TO PURCHASE OR SELL MAY BE VERBAL.—Under Civil Code of 1913, paragraph 3272, subdivision 7, providing that no party shall be sued on an agreement authorizing or employing an agent or broker to purchase or sell real estate, mines, etc., unless signed by him "or by some person by him thereunto lawfully authorized," does not mean that the person authorized must have been authorized in writing, and he may be verbally authorized, though to execute the conveyance he must have been authorized in writing.

3. EVIDENCE — EVIDENCE .AS TO OTHER TRANSACTIONS AND STATEMENTS IN CONNECTION THEREWITH HELD ADMISSIBLE ON ISSUE AS TO WHETHER PARTY WAS ACTING FOR COPARTNERS IN EMPLOYING REAL ESTATE AGENT.—On the issue whether C., in employing plaintiff to render services in connection with the acquisition of lands, was acting as agent for defendants as partners with him, evidence of the course of conduct pursued by defendants and C. in finding and purchasing other properties, and that, in discussing proposed purchases, one of the defendants made statements indicating that they and C. were partners in acquiring properties,

and intended to continue such relation, and that one sent to Arizona by such defendant to assist in getting certain options investigated the property in controversy, accompanied by plaintiff, *held* admissible as tending to establish a continuing agency.

4. APPEAL AND ERROR—VERDICT ON CONFLICTING EVIDENCE SUBSTANTIALLY SUPPORTED MUST STAND.—Where the facts are complicated and the testimony conflicting to the point of irreconcilability, the duty of passing thereon, if left to the jury, ought to be respected by the courts, and their verdict upheld where found to be substantially supported.

5. APPEAL AND ERROR—RULING OF JUDGE DENYING NEW TRIAL HELD ENTITLED TO SOME CONSIDERATION AS TO SUFFICIENCY OF EVIDENCE.—Where a trial judge not only heard the evidence, but passed upon its sufficiency on a motion for new trial, and he, like the jury, had first-hand opportunity to judge of the worth and weight of testimony, his ruling on the motion is entitled to some consideration.

6. TRIAL—VERDICT FOR RECOVERY OF MONEY NOT STATING AMOUNT IS SUFFICIENT BASIS FOR JUDGMENT WHERE PLEADINGS AND EVIDENCE POINT UNERRINGLY TO THE AMOUNT.—The provision of Civil Code of 1913, paragraph 544, that, when a verdict for recovery of money is found for plaintiff or for defendant on a counterclaim, the jury shall find the amount, is for the purpose of making the verdict certain and definite, and, while it is best to write into the verdict the amount of the money recovery decided by the jury, yet, when it finds the issue generally for plaintiff, and the pleadings and evidence unerringly point to the amount that ought to have been written into the verdict, it is a sufficient basis for the judgment.

7. TRIAL—PLEADINGS AND EVIDENCE HELD TO WARRANT JUDGMENT ON MONEY VERDICT FOR AMOUNT TO BE DETERMINED BY ARITHMETICAL CALCULATION.—Where a verdict for recovery of money for services due upon a written contract did not state the amount, evidence and pleadings *held* such that the verdict could be made certain and definite by the process of arithmetical calculation, so that it was proper for the court to make such calculation and render judgment on the verdict in the amount found.

8. APPEAL AND ERROR — DEFENDANT SHOULD NOT BE PERMITTED TO QUESTION FORM OF VERDICT WHERE FORM SHOULD BE HELD TO HAVE BEEN STIPULATED, ESPECIALLY WHEN DEFECT IS MERELY TECHNICAL.—Where the court submitted two forms of verdict and stated, "These two forms are as counsel for plaintiff desired them to be, and I believe counsel for defendant desired, so I think it is understood, is it not, gentlemen?" no objection having been made, the defendants should be held to have stipulated the form of verdict returned by the jury, and should not be allowed to question the deficiency, especially where the defect is merely technical.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. R. E. Sloan, Mr. C. R. Holton and Mr. Greig Scott, for Appellants.

Messrs. Hayes, Laney & Allee, for Appellee.

ROSS, C. J.—This is an action by Hugh R. Daggs against Vic Hanny, as administrator of the estate of John Christy, deceased, H. Kjerschow and Birger Lie, for a balance of $11,668.67 alleged to be due him upon a written contract for services in securing from the Gila Land & Cattle Company, a corporation, an agreement to sell and convey to said Christy 4,280 acres of land situated in Maricopa county and owned by the said corporation. The contract which is the foundation of plaintiff's action was dated January 21, 1920. On its face it was between Christy and plaintiff, and by its terms Christy obligated himself to pay Daggs $5 per acre if he would secure from the Gila Land & Cattle Company an agreement to sell and convey to him said 4,280 acres at $35 per acre. It is not questioned that plaintiff performed his part of the contract and earned his commissions. Christy died in April, 1920. The administrator of his estate did not contest plaintiff's claim, but admitted the liability. The other defendants, Kjerschow and Lie, against whom judgment was also entered, contested plaintiff's claim against them upon grounds that will be hereafter stated. The theory upon which the plaintiff bases his claim of liability against Kjerschow and Lie is that Christy, in entering into the agreement to pay plaintiff commissions for his services in procuring a contract of sale from the Gila Land & Cattle Company, was acting not only in his own behalf, but as the agent and representative of said de-

24 Ariz.—14

fendants, the allegations of the complaint in that regard being as follows:

"That on the 21st day of January, 1920, the plaintiff entered into an agreement in writing with John Christy, acting for himself and as the agent and representative of the defendants H. Kjerschow and Birger Lie, whereby the plaintiff agreed to procure from the Gila Land & Cattle Company, a corporation, a contract and agreement to sell and convey to the said Christy the said company's real estate and lands situate in the county of Maricopa, state of Arizona, comprising 4,208 acres, for a consideration and purchase price to be paid to said company of $35 per acre, or a total consideration to be paid to said company of $149,800, said purchase price to be paid in the following sums and at the following times, to wit: Ten thousand dollars on the 1st day of February, 1920, and the balance of said purchase price on the 1st day of April, 1920—the said Christy agreeing with the plaintiff that, immediately upon the delivery by the said company to the said Christy of good and sufficient deeds of conveyance of said real estate, the said Christy, acting in that behalf for himself and as the agent and representative of the defendants H. Kjerschow and Birger Lie, would pay to the plaintiff the sum of five dollars for each and every acre of land so conveyed."

The defendants Kjerschow and Lie demurred generally, and denied the allegations of the complaint, and particularly that John Christy in entering into the contract set forth in the complaint was "acting as the agent and representative of said defendants." It appears from the complaint and the answer that the deal was consummated by the defendants and others associated with them, instead of taking a conveyance of the lands, purchasing all the outstanding stock of the Gila Land & Cattle Company at a price, as defendants allege in their answer, equal to $40 per acre for the lands owned by the company. It is further alleged by defendants Kjerschow and Lie that at the

time they became purchasers of stock of the Gila Land
& Cattle Company they did not know nor had any in-
formation that plaintiff was entitled to receive by
virtue of any agreement with Christy, the equivalent
of $5 per acre for said land, and that, if anybody
owed plaintiff anything, it was Christy in his lifetime,
and, since his death, his estate. The form of the
verdict was:

"We, the jury duly impaneled and sworn in the
above-entitled action, upon our oaths do find for the
plaintiff against the defendants."

Upon this verdict the court entered judgment
against the defendants Kjerschow and Lie for the
sum of $11,668.67, with interest at the rate of six
per cent per annum from April 1, 1920. Defendants
objected to the entering of judgment upon said ver-
dict upon the ground that the verdict failed to find
the amount of recovery. The appeal is from the
order overruling the motion for a new trial and from
the judgment.

It is first contended by defendants that the com-
plaint does not state facts sufficient to constitute a
cause of action against them, and that the court erred
in overruling their general demurrer. It is claimed
that the allegation that John Christy, "acting for
himself and as the agent and representative of the
defendants" Kjerschow and Lie in making said con-
tract, falls short of being an allegation that he had
authority from said defendants to enter into said
contract for them, an essential fact to be shown. We
are cited to no pertinent authority sustaining this
view. On the contrary, the rule seems to be that—

"Where agency is alleged, a general allegation is
sufficient, without averring that the agent had au-
thority to act in the premises, that being regarded
as an averment of a conclusion of law, or at best an
unnecessary repetition of a fact already stated."
2 C. J. 906, § 611.

It is said the complaint, for another reason, is insufficient in that it fails to allege that Christy had written authority to enter into said contract in their behalf from defendants Kjerschow and Lie. This, it is contended, is necessary under subdivision 7, paragraph 3272, Civil Code, which provides that no party shall be sued upon "an agreement authorizing or employing an agent or broker to purchase or sell real estate, mines, or other property for compensation or a commission," unless the same be signed by him, "or by some person by him thereunto lawfully authorized." The contract in this case is in writing and signed by Christy in his own behalf and as agent and representative of the other defendants if the allegations to that effect are to be believed. This court in *Murphey* v. *Brown,* 12 Ariz. 268–275, 100 Pac. 801, ruled against defendants' contention, in construing subdivision 4 of paragraph 2696, Civil Code of 1901, practically the same as subdivision 7 of paragraph 3272, Civil Code of 1913, stating:

"That one shall be 'lawfully authorized' to sign a binding memorandum under section 4 of the statute of frauds does not mean that he must have been authorized in writing; he may have been verbally authorized, although to execute the conveyance he must have been authorized in writing."

Daggs' employment was not to convey the lands in question, but to secure an agreement from the owner to sell and convey. So we conclude that the complaint stated a cause of action against the defendants, Kjerschow and Lie.

The next assignment of error is as follows:

"The court erred during the trial in permitting, over the objection of the defendants Kjerschow and Lie, the witness Desmond Christy to testify to a conversation between the defendant Birger Lie and John Christy relative to business relations existing between said Lie and said Christy on November 18, 1919, for the reason that it related to other matters

than that set forth in plaintiff's complaint and did not prove or tend to prove the allegations of said complaint, and for the further reason that the witness stated that the substance of the conversation was as to matters fully disclosed by an instrument in writing which had been offered in evidence by plaintiff and refused by the court upon the ground that it did not relate to the transactions set forth in the complaint, and the evidence was too remote, and therefore incompetent.''

We think it necessary, in order to understand the above assignment, to make a statement of some of the facts not in dispute, and then the evidence toward which the assignment is directed. The defendants Kjerschow and Lie (brothers-in-law) during the time of this deal, and before, were residents of Christiana, Norway, and John Christy resided at Clifton, Arizona. Prior to September, 1919, these three parties became interested together in the acquisition of mines and mining claims and timber lands and cattle in Greenlee and Apache counties, Arizona, and in Grant county, New Mexico. Christy's contribution to the enterprise consisted in finding desirable properties, and Kjerschow and Lie were to, and did, furnish the money to pay for the properties. Christy had authority to acquire all such property in his own name, in trust for all, and they were to be equal owners thereof; that is, each was to have one-third of all property acquired and of the rents, issues, profits, interests, and accruments thereof, and to bear expenses and losses equally. This arrangement, so far as the record shows, was originally verbal, but on September 20, 1919, it was reduced to writing in a paper designated a ''declaration of trust'' signed by Christy, Kjerschow and Lie. This instrument was offered by plaintiff as evidence tending to show the relation that Christy sustained to the other defendants and as tending to show the course of dealing between them from which Christy's agency to make contract with

Daggs might be inferred, but upon objection of defendants that it was concerning other transactions, and therefore immaterial, the court rejected it. Later it was admitted upon an offer of the defendants, and its substance we have stated.

We next state the substance of the evidence admitted over defendants' objection and assigned as error. In November, 1919, Lie came to Arizona, and was with Christy three weeks or more looking over the properties in Apache and Greenlee counties, Arizona, and in Grant county, New Mexico. During this visit Lie and John Christy (according to the testimony of Desmond Christy, son of John) became interested in two tracts of land known as the Palomas tract and the Santa Cruz tract near Tucson, and they also discussed the possibilities of cotton development in the Salt River Valley. Desmond Christy, in speaking of what he heard between his father and Lie, testified, among other things:

"The substance of the conversation was that Mr. Lie, my father, and Mr. Kjerschow were associated in agreements as partners in various enterprises in Arizona and would continue to be so in the future; . . . that under a partnership agreement which was then in existence he and my father and Mr. Kjerschow were equal partners in propositions which they were then working on, and it was their intention to acquire more interests. . . . He was satisfied with the work and wanted to continue in the same manner and wanted my father to acquire more interests for himself, his brother-in-law, Mr. Kjerschow, and my father."

Statements of a similar character were made to two or three other witnesses. He also testified that on Lie's leaving Arizona he stated he would send his New York office man, Christian Schiott, out to Arizona with the books of the Globe Copper Company (one of the properties they had acquired), and that he, Schiott, would help his father get options on the

Palomas and Santa Cruz tracts; that Schiott did come
to Arizona, and with his father visited Phoenix, and
on his return therefrom between the 23d and 26th of
January, 1920, told him that he had gone over the
Gila Land & Cattle Company properties and had in-
vestigated them thoroughly. He showed Desmond
Christy a number of pictures taken out on the prop-
erty of the Gila Land & Cattle Company, in which
plaintiff, Daggs, was taken. Schiott said Daggs ac-
companied him in his investigations.

This evidence was offered, as stated by plaintiff's
counsel, for the purpose of establishing ''agency or
representative capacity of the deceased [John Christy]
and a continuing representative capacity, right down
through this transaction,'' and we think it was com-
petent for that purpose. Plaintiff's theory being that
the three, Kjerschow, Lie, and Christy, were equal
partners not only in the properties acquired before
September 20, 1919, but that their agreement con-
templated an extension of the enterprise upon like
terms to the acquisition of other property in Arizona,
any oral statements of Lie or Kjerschow admitting
such an understanding or agreement would be admis-
sible as evidence for what it is worth. The fact that
the Gila Land & Cattle Company contracts were all
taken in Christy's name, the course of conduct pur-
sued in the finding and purchasing their other prop-
erties, while not conclusive that they acquired the
Gila Land & Cattle Company's lands upon the same
terms, is not so unrelated as to be incompetent.

''The law of partnership is a branch of the law of
agency. . The functions, rights, and duties of the
partners in a great measure comprehend those of
agents, and the general rules of law applicable to
agents likewise apply to partners. Accordingly the
liability of one partner for the acts of his copartner
is founded on the principles of agency.'' 20 R. C. L.
882, § 94.

The testimony of Desmond Christy had a tendency to establish a relationship between the defendants and Christy, similar to that in connection with the properties acquired by them in Apache and Greenlee counties, Arizona, and Grant county, New Mexico.

Assignment No. 3 is practically a restatement of the objections contained in assignment No. 2, and what we have said concerning assignment No. 2 disposes of this assignment.

At the close of plaintiff's case, the defendants moved the court to direct a verdict in their favor because there was no legal evidence to establish that John Christy, in signing the contract, did so as the agent and representative of the defendants. At the conclusion of all the evidence the same motion was renewed. Both motions were denied by the court. These rulings are assigned as error. As we have heretofore said, there is no question but that Daggs earned his commissions, and the liability of the Christy estate is not only admitted, but settled beyond peradventure. The serious question, and one of considerable doubt, is the liability of the other defendants, Kjerschow and Lie. If the agency of Christy, as alleged in the complaint, was established by competent evidence, either as growing out of their partnership arrangement, or out of the relation of principal and agent, the other defendants would be liable on the contract. We confess, after a careful review of the whole evidence, we entertain some doubt upon the question. There is evidence that defendants Kjerschow and Lie had a general understanding with Christy that their relationship of partners should be extended to cover other properties upon like terms as those included in the "declaration of trust," and that Christy might in the same manner acquire such property as he had theretofore pursued.

Letters, telegrams and cablegrams from defendants Kjerschow and Lie to Christy, were introduced in evi-

dence, which, when considered with other evidence, show or strongly tend to show, that they and Christy were interested together in the Gila Land & Cattle Company purchase as in their former acquisitions. In a letter dated March 3, 1920, Lie wrote to Christy, among other things:

"When your message about the Gila Bend came I wavered between a deep admiration for your courage and despair. . . . Harald [Kjerschow] considered it lost game from the start. . . . At the precipice of failure I resorted to Mr. Erichsen and explained our dilemma and we have arranged to raise $80,000 on the presumption that he gets in on the ground floor. . . . I do not for a moment doubt that the investment is splendid and will be the basis for the Exploration Company [the holding company for Kjerschow's, Lie's, and Christy's properties]. . . . You can feel that your efforts in our behalf are highly appreciated on this side, and Harald is doing nothing but preparing for Arizona."

On January 9, 1920, Kjerschow and Lie sent a cablegram to Christy in which they said:

"Convinced can make everlasting connections for all propositions."

February 28, 1920, Kjerschow cabled Christy:

". . . Cable highest obtainable mortgage Gila Bend and consequently when and how much cash required for purchase. . . . All documents and description property necessary [to] obtain result here. If necessary draw on Birger [Lie] ten thousand dollars as others not available."

There were several other cablegrams of the same nature as the ones we have quoted from sent by Kjerschow or Lie to Christy. Beside there was evidence that after Kjerschow came to Arizona in July, 1920, and after he had made some local investigations and inquiries, he acknowledged to the plaintiff, and to another witness, that there was due Daggs the amount sued for.

Since the jury, and not we, are the triers of the facts, we feel constrained to yield to their judgment. In this case, as in all others where the facts are somewhat complicated, and the testimony thereon conflicting to the point of irreconcilability, the duty and office of passing thereon, if left to a jury, is, and of right ought to be, respected by the courts, and their verdict upheld, if in the evidence the court finds substantial support thereof. If there was an agreement between Christy, Kjerschow, and Lie to extend the partnership to cover other properties, and as to that it was for the jury to say, then Christy's contract made in pursuance of the aims and purposes of such partnership would be binding alike on all the partners.

The question of agency as growing out of the relations of partners and the power of one partner to make contracts binding the other partners, and the proper limitations of that power, was submitted to the jury in instruction unobjectionable as applied to the evidence in the case. It would extend this opinion, and serve no useful purpose, to review in detail the evidence, and we will not undertake the task.

The trial judge not only heard the evidence, but passed upon its sufficiency on a motion for a new trial. He, like the jury, had a first-hand opportunity to judge of the worth and weight of the testimony as gained by actual contact and observation of the witnesses. His action on the motion for new trial is entitled to some consideration. 4 C. J. 864, § 2839.

It is next contended the form of the verdict is not in compliance with the statute which reads:

"When a verdict is found for the plaintiff in an action for the recovery of money or for the defendant, when a counterclaim for the recovery of money is established exceeding the amount of the plaintiff's claim as established, the jury shall also find the amount of the recovery." Par. 544, Civ. Code.

The purpose of this provision is that the verdict shall be certain and definite as to the amount intended to be given the successful litigant and from the sole basis for the judgment to be entered. One way, and by far the best way, is to write into the verdict the amount of the money recovery decided upon by the jury. But when the jury finds the issues generally for the plaintiff, and the state of the pleadings and the evidence is such as unerringly to point out the amount that ought to have been written into the verdict, we think, on principle and authority, it is sufficient to form the basis of a judgment. 38 Cyc. 1880; *Warren* v. *Smith*, 24 Tex. 488, 76 Am. Dec. 115; *Carothers* v. *Lange* (Tex. Civ. App.), 55 S. W. 580; *Redmond* v. *Weissman*, 77 Cal. 423, 20 Pac. 544; *Sandell* v. *Norment*, 19 N. M. 549, 145 Pac. 259. In the last case it is said:

"Where the question as to the amount of the money judgment which plaintiff is entitled to recover, if a recovery is to be had, is not disputed, and can be ascertained from the pleadings, and is simply a matter of calculation, a verdict returned by the jury, finding the issues in the case for the plaintiff, without stating the amount of the recovery, is sufficient to support a judgment."

In the present case it was admitted by all that Daggs was entitled under the contract to $5 per acre from the estate of John Christy; the only question being as to whether he was also entitled, under the contract, to a recovery against Kjerschow and Lie. The liability was in dispute, and not the amount, in case liability was established. While defendants' general denial of any indebtedness to plaintiff in any sum whatever was broad enough to admit evidence of other defenses, the fact remains that defendants' evidence was all directed to disproving authority in Christy to act in making the contract as their agent and representative, and not to disprove the amount

claimed by plaintiff after allowing all credits. By the process of arithmetical calculation the verdict can be made very certain as to the amount intended to be given plaintiff. The total amount of Daggs' commissions at $5 per acre, for 4,280 acres, was $21,400. This should be credited with a draft paid to Daggs for $10,000, less exchange. While witness Hanny testified plaintiff acknowledged the $10,000 draft as a credit to that amount, the uncontradicted testimony is that the exchange thereon was the sum of $268.67, and that he received out of such draft only $9,731.33. Deducting this payment from the total of commissions, there is left a balance of $11,668.67. This is the amount of the judgment as entered, together with interest at six per cent per annum from April 1, 1920, being the amount prayed for in the complaint.

At all events, before the jury retired to consider the case, the court submitted to them two forms of verdict and stated:

"These two forms are as counsel for plaintiff desired them to be, and I believe counsel for defendants desired, so I think that is understood, is it not, gentlemen?"

No objection having been made, we think defendants should be held to have stipulated the form of verdict returned by the jury, and should not be allowed to question its sufficiency, especially when the defect is merely technical, as in this case.

The judgment is affirmed.

McALISTER and FLANIGAN, JJ., concur.