IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

DEC 28 2011

COURT OF APPEALS
DIVISION TWO

MICHAEL A. GOODMAN, a married man,

               Plaintiff/Appellee,

v.

PHYSICAL RESOURCE ENGINEERING, INC., an Arizona corporation,

               Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2 CA-CV 2011-0053
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20092715

Honorable Ted B. Borek, Judge

REVERSED AND REMANDED

---

Thompson-Krone, P.L.C.
  By Russell E. Krone

                               Tucson
Attorneys for Plaintiff/Appellee

Meagher & Geer, P.L.L.P.
  By Kurt M. Zitzer and Thomas H. Crouch

                          Scottsdale
Attorneys for Defendant/Appellant

---

E S P I N O S A, Judge.

**¶1**      Physical Resource Engineering, Inc. (PRE) appeals from a judgment entered after a jury trial in favor of Michael Goodman on his claim for breach of contract.

PRE also challenges the trial court's denial of its motion for judgment as a matter of law pursuant to Rule 50, Ariz. R. Civ. P., and motion for a new trial pursuant to Rule 59, asserting there was no evidence a contract between PRE and Goodman had existed, and, in any event, under the circumstances of this case Arizona law limited Goodman to pursuing only a tort claim. Additionally, PRE contends the case should be remanded for a new trial on Goodman's negligence claim. For the reasons set forth below, we reverse and remand.

## Factual Background and Procedural History

¶2　　　　We view "the evidence in a light most favorable to upholding the jury verdict." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 13, 961 P.2d 449, 451 (1998). Goodman, a Tucson real estate developer, hired Tortolita Valley Homes (TVH) to construct two luxury duplex buildings on property Goodman owned on Fort Lowell Road. In April 2008, TVH hired PRE, a civil engineering, surveying, and geological engineering firm, to stake the location for Goodman's buildings according to a site plan prepared by Goodman's architect, Scott Isles, and approved by the City of Tucson. Staking each building required PRE to "dimensionally locate the house on the site [and] place four pins where the house went."

¶3　　　　According to the site plan, one of the buildings should have been located twenty feet, three inches south of the north property line, resulting in a twelve-foot-wide rear yard on the building's north side. PRE staked the building approximately six feet north of where it should have been built, and TVH constructed the building according to

2

the stakes, resulting in a yard depth of only six feet and a violation of setback and floodplain requirements. In September 2008, TVH and Isles determined the building location did not conform to the site plan, and Goodman subsequently sued PRE for breach of contract and professional negligence.[1]

¶4        PRE filed a motion for partial summary judgment in which it argued there was no contract between it and Goodman, and, furthermore, it had not breached its express agreement with TVH. PRE also contended that any claim Goodman might have against it could be based only on the alleged breach of a professional duty, limiting Goodman to a negligence claim. The trial court denied the motion following oral argument.

¶5        During trial, PRE moved for judgment as a matter of law pursuant to Rule 50, again arguing there was no contract between the parties and the verbal contract between PRE and TVH had not been breached. As to the negligence claim, PRE contended that Goodman had failed to introduce sufficient evidence establishing PRE had staked the building in the wrong location or, alternatively, that Goodman and Isles should be found comparatively at fault. The court denied PRE's motion. Following the close of evidence, PRE renewed its Rule 50 motion and later moved for a new trial pursuant to Rule 59 on the same grounds, which the court again denied. The jury found that a

---

[1]The trial court dismissed Goodman's additional claim for breach of the covenant of good faith and fair dealing. TVH subsequently assigned to Goodman any claims it may have had against PRE. The court denied Goodman's subsequent motion to amend the complaint to add the assigned claims and Goodman has not challenged that ruling on appeal.

contract existed between Goodman and PRE, and that PRE had breached it, causing damages of $217,314. The court entered judgment in favor of Goodman in that amount, and awarded him attorney fees and costs under A.R.S. §§ 12-341.01 and 12-322. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1), (A)(5)(a).

## Discussion

¶6 PRE contends the trial court erred in denying its motions for judgment as a matter of law on Goodman's breach of contract claim because there was no evidence a contract existed between PRE and Goodman under either of two theories Goodman advanced at trial. We review *de novo* the denial of a motion for judgment as a matter of law under Rule 50. *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, ¶ 14, 217 P.3d 1220, 1229 (App. 2009); *Shoen v. Shoen*, 191 Ariz. 64, 65-66, 952 P.2d 302, 303-04 (App. 1997). We will uphold the ruling unless "'the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'" *A Tumbling-T Ranches*, 222 Ariz. 515, ¶ 14, 217 P.3d at 1229, *quoting Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Similarly, it is for the trial court to determine, in the exercise of its discretion, whether to grant a motion for a new trial on the ground that the verdict is against the weight of the evidence; absent an abuse of discretion, we will not disturb the court's ruling. *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, ¶ 15, 31 P.3d 806, 810 (App. 2001). Both rulings will be affirmed "[i]f any substantial evidence could lead

4

reasonable persons to find the ultimate facts to support a verdict." *Id.* (motion for new trial); *Hutcherson*, 192 Ariz. 51, ¶ 13, 961 P.2d at 451 (motion for judgment as a matter of law).

**Implied Contract between PRE and Goodman**

¶7 To prevail on a breach of contract claim, Goodman was required to prove a contract existed between him and PRE, PRE breached the contract, and Goodman suffered damages as a result. *See Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975), *citing Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 94, 387 P.2d 235, 238 (1963). For a valid contract to have been formed between them, there must have been an offer, acceptance of the offer, and consideration, *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App. 1983), and they must have intended to be bound by the agreement, *see Schade v. Diethrich*, 158 Ariz. 1, 9, 760 P.2d 1050, 1058 (1988). An offer has no binding effect unless and until accepted by the offeree to whom the offer was directed. *AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 294, 848 P.2d 870, 873 (App. 1993) (subcontractor's bid to contractor and owner). An agreement can be implied and is enforceable where there is a valid offer and acceptance, and the only term missing is the final price. *Schade*, 158 Ariz. at 5-11, 760 P.2d at 1054-60.

¶8 The parties agree there was no written or express contract between them for the staking job. Goodman contends, however, that based on evidence of their prior course of dealing and other circumstances, the jury reasonably could infer PRE had

5

intended to enter into a contract with him.[2]  S*ee Carroll v. Lee*, 148 Ariz. 10, 13, 712 P.2d 923, 926 (1986) (implied contract, with same legal effect as express contract, may be inferred as matter of reason and justice from acts and conduct of parties and circumstances surrounding their transaction).  Goodman argues that PRE was aware he was the owner of the property to be staked, he knew PRE was working on the job, and PRE had worked on a number of his construction projects in the past.  But that does not establish that either Goodman or PRE intended to enter into a contract with one another on this particular project.  *See Keith Equip. Co. v. Casa Grande Cotton Fin. Co.*, 187 Ariz. 259, 262, 928 P.2d 683, 686 (App. 1996) (course of dealing does not create contract, and conduct of businesses to be interpreted in commercial context of interactions); *cf. Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, ¶ 26, 967 P.2d 607, 611-12 (App. 1998) (parties may be contractually bound if intent to do so clear from surrounding circumstances and parties' conduct, and there has been mutual assent).

¶9        Although Goodman repeatedly points to evidence PRE had knowledge, from a variety of sources, that he was the owner of the property, he provides no authority for the proposition that such knowledge established the existence of a contract with him rather than TVH.  It is undisputed that PRE was hired by TVH and dealt exclusively with TVH throughout the course of the project.  Thus, other than possibly through TVH,

---

[2]In his complaint, the only theory Goodman advanced was that a contract had been formed as a result of TVH being his agent in its dealings with PRE.  The trial court denied Goodman's motion to amend his complaint to add a course-of-dealing theory.  We may, however, affirm the jury's verdict for any reason supported by the evidence.  *See Hutcherson v. City of Phoenix*, 192 Ariz. 51, ¶ 13, 961 P.2d 449, 451 (1998).

acting as Goodman's agent as we address *infra*, there was no evidence Goodman made an offer to PRE, much less that PRE accepted an offer from Goodman, to perform the staking on this project.

¶10 Goodman nevertheless contends that a contract with PRE was implied because PRE president Dan White had met with him personally to discuss possible solutions after it was learned the property had been staked in the wrong place. But we agree with PRE that such conduct occurring after the fact cannot serve as the basis for finding an implied contract existed given that there was an express contract between PRE and TVH. *See Brown v. Beck*, 68 Ariz. 139, 143, 202 P.2d 528, 530 (1949) (no implied agreement where express contract existed for labor performed); *cf. Miller Cattle Co. v. Mattice*, 38 Ariz. 180, 189, 298 P. 640, 643 (1931) (conversations following formation of express contract could not establish new contract, absent new consideration). Accordingly, we conclude there was insufficient evidence from which reasonable jurors could find any type of direct contract existed between PRE and Goodman. We therefore turn to the question whether TVH was acting as Goodman's agent when it hired PRE, thereby creating a contract between Goodman and PRE.

**Contract Formed through Agency**

¶11 PRE argues there was no evidence that TVH was acting as Goodman's agent when it employed PRE to stake the property; rather, the record shows PRE entered into an express oral agreement only with TVH, and nothing said or done created a contractual relationship between PRE and Goodman. Goodman counters that the

7

circumstances, acts, and conduct of Goodman and TVH manifested an agency relationship that resulted in a binding contract between him and PRE. Goodman, as the proponent of the agency theory, had the burden of proof. *Brown v. Ariz. Dep't of Real Estate*, 181 Ariz. 320, 326, 890 P.2d 615, 621 (App. 1995).

¶12 "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006) (hereinafter "Restatement").[3] There are two types of agency, express and apparent. *Curran v. Indus. Comm'n*, 156 Ariz. 434, 437, 752 P.2d 523, 526 (App. 1988).[4] An agent holds express authority "'[i]f there is evidence that the principal has delegated authority by oral or written words which authorize him to do a certain act or series of acts.'" *Premium Cigars Int'l, Ltd. v. Farmer-Butler-Leavitt Ins. Agency*, 208 Ariz. 557, ¶ 30, 96 P.3d 555, 565 (App. 2004), *overruled on other grounds by Webb v. Gittlen*, 217 Ariz. 363, 174 P.3d

---

[3]In the absence of prior decisions to the contrary, we may seek guidance from the Restatement when it is applicable. *Maricopa P'ships, Inc. v. Petyak*, 163 Ariz. 624, 626, 790 P.2d 279, 281 (App. 1989).

[4]Apparent agency exists when "'the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent.'" *Curran*, 156 Ariz. at 437, 752 P.2d at 526, *quoting Canyon State Canners v. Hooks*, 74 Ariz. 70, 73, 243 P.2d 1023, 1025 (1952). "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement § 2.03. Neither party argues that Goodman "intentionally or inadvertently induced" PRE to believe TVH was Goodman's agent. *See Curran*, 156 Ariz. at 437, 752 P.2d at 526.

275 (2008), *quoting Curran*, 156 Ariz. at 437, 752 P.2d at 526. Generally, whether agency exists is a question of fact, but when the material facts are not in dispute, the existence of such a relationship is a question of law for the court to decide. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, ¶ 21, 161 P.3d 1253, 1260 (App. 2007).

¶13      Goodman contends the principal's intent is controlling in determining whether an agency relationship was created, citing *Brutinel v. Nygren*, 17 Ariz. 491, 497, 154 P. 1042, 1044 (1916), and insists the evidence established that such a relationship existed here. Goodman argues the record shows he hired TVH to oversee the construction of the duplex and hire subcontractors for the project, asserting he had done so in the past, and points to his own testimony that TVH worked for him and only him at that time. He further argues this court has recognized course of dealing between principal and agent as a substantial factor for implying an agency relationship, citing *Phx. W. Holding Corp. v. Gleeson*, 18 Ariz. App. 60, 65-66, 500 P.2d 320, 325-26 (1972) (agency may be established from relation of parties to each other and to subject matter, their acts and conduct); *Kjerschow v. Daggs*, 24 Ariz. 207, 213-16, 207 P. 1089, 1091-92 (1922); and *Brutinel*, 17 Ariz. at 497, 154 P. at 1044 (principal's intent to form agency may be implied from particular circumstances).

¶14      PRE disputes Goodman's legal claims, contending the role of a general contractor does not imply an agency relationship with the property owner, citing *Flanigan & Sons, Inc. v. Childs*, 248 A.2d 473, 478 (Md. 1968) (no contract between subcontractor and owner even though subcontractor possessed site plan identifying owner

and subcontractor was informed details of construction would be discussed with owners), and *Summerall Elec. Co. v. Church of God at Southaven*, 25 So.3d 1090, ¶¶ 21, 24 (Miss. Ct. App. 2010) (statements owner entrusted general contractor with authority to do what was necessary for construction did not establish agency). PRE points to evidence that Goodman considered TVH an independent contractor, and the owner of TVH, Jesse Patterson, identified himself as a general contractor rather than an agent for Goodman. And PRE notes Patterson clarified that although he began to work exclusively for Goodman in 2007 as a general contractor, he was working on other jobs for other owners at the time he hired PRE. Finally, PRE emphasizes that neither Patterson nor Goodman ever testified that TVH had acted in the capacity of an agent in contracting with PRE, and asserts that the agency theory is merely an after-the-fact justification to support Goodman's contract claim.

¶15        Although agency generally is a question of fact, the issue of agency may be decided as a matter of law where "'no competent evidence legally sufficient to prove it has been introduced'" and "'the material facts from which it is to be inferred are undisputed and only one conclusion can be reasonably drawn therefrom.'" *Schenks v. Earnhardt Ford Sales Co.*, 9 Ariz. App. 555, 557, 454 P.2d 873, 875 (1969), *quoting* 3 C.J.S. *Agency* § 330(a). Where no direct contract exists between a subcontractor and property owner, our courts have held a subcontractor has no standing to sue the owner for breach of contract solely based upon the alleged agency of a general contractor. *Keefer v. Lavender*, 74 Ariz. 24, 26, 243 P.2d 457, 459 (1952) (general contractor not agent of

owner, and statutory agency created through mechanics' liens did not establish general agency); *see also Fagerlie v. Markham Contracting Co.*, 227 Ariz. 367, ¶ 18, 258 P.3d 185, 190 (App. 2011) (general contractor statutory agent of owner for mechanics' lien purposes only and not general agent).

¶16     In *Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 529-30, 683 P.2d 327, 328-29 (App. 1984), a subcontractor sought to recover unpaid funds from a property owner, alleging breach of an implied contract formed between the owner and subcontractor through the general contractor's agency.  Although the owner did not contract directly with the subcontractor, the owner approved the general contractor's choice of subcontractor and inspected the subcontractor's work from time to time.  *Id*. at 529, 683 P.2d at 328.  This court held a general contractor is not an owner's agent except in the limited statutory context of mechanics' liens.  *Id*. at 531, 683 P.2d at 330.  We reasoned that privity of contract must exist before a party may seek to enforce a contract, and, since there was no agency, no privity of contract existed between the subcontractor and owner, and the subcontractor had no claim for breach of contract against the owner.  *Id*. Although *Stratton* and the above cases relate to the opposite scenario from the one at hand—an owner seeking recovery against a subcontractor—we find them controlling.

¶17     At trial, Goodman testified "[Patterson] is in charge of doing all the construction work, getting it completed and getting it finaled out with the city," and that Patterson is "an independent contractor" who does what Goodman requests on the projects.  Patterson testified, not inconsistently with Goodman's statements, that he alone

11

was responsible for hiring subcontractors, and Goodman did not tell him which ones to employ. Goodman identifies no evidence in the record that he exercised authority over TVH's hiring process or decisions. *See Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, ¶¶ 33, 37-41, 118 P.3d 29, 35, 36 (App. 2005) (no agency where insurer did not control claim processor's negotiations to fulfill contract, although claim processor received funds "[o]n behalf of" insurer); *Brown v. Ariz. Dep't of Real Estate*, 181 Ariz. at 326, 890 P.2d at 621 (right to control transaction factor in determining agency relationship); *see also Indep. Gin Co. v. Parker*, 19 Ariz. App. 413, 415, 508 P.2d 78, 80 (1973) (assignee not lessee's agent where owner leased lands and lessee relinquished to assignee all control and dominion over farming operations, leased premises, and operating machinery). Moreover, although TVH had used PRE as a subcontractor for Goodman's projects several times previously, there was no evidence that Goodman had utilized TVH in an agency capacity in the past to form contracts between Goodman and subcontractors that TVH had hired. *See Kjerschow*, 24 Ariz. at 215-18, 207 P. at 1092-93 (series of real estate transactions in which representative had acted on behalf, and at direction, of enterprise in acquiring properties demonstrated continuing agency); *Holsclaw v. Catalina Sav. & Loan Ass'n*, 13 Ariz. App. 362, 366-67, 476 P.2d 883, 887-88 (1970) (collection agent's long and repeated course of accepting payments on behalf of mortgage holders created agency by implication).

¶18        Furthermore, even assuming *arguendo* that TVH was Goodman's agent, there is no evidence TVH ever disclosed it was acting in that capacity when it engaged

12

PRE's services to stake the property. A principal is undisclosed if the third party has no notice the agent is acting for a principal. Restatement § 1.03(2)(b); *cf. Myers-Leiber Sign Co. v. Weirich*, 2 Ariz. App. 534, 536, 410 P.2d 491, 493 (1966) (for agent to avoid personal liability when acting on behalf of principal, agent must disclose agency and identify principal at time of transaction). It appears the majority of cases dealing with undisclosed principals arise in the context of third parties or agents attempting to hold the principal liable on a contract.[5] When the situation is reversed, however, it is unlikely a third party can accurately assess the interests at stake, because the third party is unaware of the actual party to the contract. *See* Restatement § 2.03 cmt. f (if third party in doubt whether actor represents actor's interests only, third party lacks reasonable basis to believe actor has power to affect principal's legal position).

¶19    The record supports PRE's assertion that TVH did not inform PRE that it was acting as Goodman's agent and, thus, that PRE was contracting with Goodman, when TVH hired PRE to stake the property. Patterson testified as follows:

---

[5]*See, e.g.*, *Litchfield v. Green*, 43 Ariz. 509, 510, 33 P.2d 290, 290 (1934) (architect sued alleged principal to collect for work performed on principal's behalf after putative agent hired architect without lawful authority); *Kjerschow*, 24 Ariz. at 207, 207 P. at 1089 (plaintiff sued to recover from defendants for land transaction, alleging intermediary defendants' agent); *Phx. W. Holding Corp.*, 18 Ariz. App. at 63, 500 P.2d at 323 (contracting party sought to enforce against corporate principal lease repayment agreement entered into by corporation's putative agent); *Schenks*, 9 Ariz. App. at 556, 454 P.2d at 874 (automobile-accident victims sued automobile dealer for personal injuries sustained in accident caused by dealer's alleged agent); *Corral v. Fid. Bankers Life Ins. Co.*, 129 Ariz. 323, 324-25, 630 P.2d 1055, 1056-57 (App. 1981) (decedent's estate sued insurance company to enforce life-insurance contract submitted to insurance agent but not accepted by insurance company at time of decedent's death).

13

Q: As the general contractor, you're the one that's responsible for hiring the subcontractors?

A: Yes.

Q: Mr. Goodman doesn't tell you which subs to hire?

A: No.

Q: If there's a problem with the sub's work that's between you and the sub?

A: Yes.

Q: When you hired PRE to work on projects, there were some projects that you were working on for Mr. Goodman but others that you were working on for other people; correct?

A: Yes.

Q: When you hired PRE to do construction staking, you never told them I'm doing this work for Mr. Goodman or somebody else?

A: No.

Q: When you hired them, they were working for you[?]

A: Yes.

Goodman nonetheless argues that PRE was aware of an agency relationship between Goodman and TVH, relying on two other contracts between PRE and TVH pertaining to other work performed on the same property that identified Goodman as "owner." Goodman also points out PRE had possessed a hydrology report for the property that had been prepared for Goodman. Further, PRE had worked on Goodman's projects in the past, and PRE recognized Patterson "comes in on behalf of Mike Goodman for his

14

projects." But it is not the duty of the third person to determine the existence of a principal, rather the duty is on the agent to disclose the principal at the time of the transaction. *Mahan v. First Nat'l Bank of Ariz.*, 139 Ariz. 138, 141, 677 P.2d 301, 304 (App. 1984), *citing Myers-Leiber Sign Co.*, 2 Ariz. App. at 536, 410 P.2d at 493. Goodman directs us to no evidence that at the time TVH hired PRE, it informed PRE or indicated in any way that it was doing so in a representative capacity for Goodman. Finally, even if Goodman had given TVH authority to bind him to some contracts, there is no evidence he directed TVH to enter into this particular contract with PRE on his behalf.

¶20 Because there is no evidence TVH was acting as Goodman's agent for the staking contract, and PRE had no notice otherwise that Goodman was a party to the contract, there was insufficient evidence for the jury to have found the existence of a contract between PRE and Goodman based upon an agency theory. *See generally* Restatement § 2.03 cmt. f (where principal undisclosed, third party has no knowledge principal is party to contract). Accordingly, we conclude the trial court erred in denying PRE's Rule 50 and 59 motions.

¶21 Because of our resolution of the contract issues, we need not address PRE's additional argument that Arizona law limits Goodman to pursuing only remedies under tort law.

## Disposition

¶22 For the reasons set forth above, we reverse the trial court's entry of judgment in favor of Goodman on his claim for breach of contract and its order denying

15

PRE's motions for post-trial relief under Rules 50 and 59, as well as its award of $80,000 in attorney fees. PRE has requested an award of its attorney fees under A.R.S. § 12-341.01, and, because it is the successful party on appeal, we grant its reasonable fees upon compliance with Rule 21, Ariz. R. Civ. App. P. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App. 1983). Goodman's request for attorney fees on appeal is denied, and this case is remanded to the trial court for further proceedings consistent with this opinion.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

16