NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VACC LLC, *Plaintiff/Appellant,*

*v.*

CHICAGO TITLE INSURANCE COMPANY, et al., *Defendants/Appellees.*

Nos. 1 CA-CV 19-0508, 1 CA-CV 20-0075
(Consolidated)

FILED 2-23-2021

Appeal from the Superior Court in Maricopa County
No. CV2015-013762
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Beus Gilbert McGroder, PLLC, Phoenix
By Cory L. Broadbent, Cassandra H. Ayres
*Counsel for Plaintiff/Appellant*

Gust Rosenfeld, PLC, Phoenix
By Charles W. Wirken, Scott A. Malm,

Fidelity National Law Group, Phoenix
By Nathaniel B. Rose
*Co-Counsel for Defendants/Appellees Chicago Title Insurance Company and
Chicago Title Agency, Inc.*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Cynthia J. Bailey joined.

---

**C A T T A N I**, Judge:

**¶1** Villages at Country Club, LLC ("VACC"), appeals the superior court's grant of summary judgment in favor of Chicago Title Agency ("CTA") and Chicago Title Insurance Company ("CTIC") on VACC's claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and bad faith relating to a title insurance policy. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** In December 2013, VACC purchased a parcel of land in Mesa (the "Property") planning to develop single family residences for sale. The parcel had been partially developed with triple-plex townhomes intended to be leased as residences. VACC's predecessor in interest recorded covenants, conditions, and restrictions ("CC&Rs") stating that the "declarant intends to lease portions of the Lots to be used as the sites for residential dwellings." The Property was subject to a plat (the "Plat") that incorporated the lease restriction.

**¶3** The 2013 purchase agreement named CTA as the escrow agent, and CTA procured a title insurance policy (the "Policy") for VACC from CTIC. The Policy insured a fee simple interest in the Property. It insured against title defects, including unmarketability of title, subject to certain exceptions and exclusions. VACC also negotiated with CTIC and received expanded coverage through additional policy endorsements.

**¶4** Before closing on the Property, VACC discussed with city employees its intent to resize the lots and change the building elevations, which would require an amendment to the Plat. After these discussions, VACC purchased the Property, acquiring a fee simple interest in the Property.

**¶5** VACC began construction, completing residences on nineteen lots that VACC then sold as separate, fee simple properties. Thereafter, sometime in 2014, residential developer D.R. Horton expressed

an interest in purchasing 333 single-family residential lots within the Property. VACC and D.R. Horton entered into a purchase agreement in July 2014 to that effect.

¶6            In the fall of 2014, D.R. Horton's title agency discovered that the Property was platted as one large lot, rather than individual lots. D.R. Horton determined that the Plat, incorporating the CC&Rs, contemplated that the Property would only be leased, and not subdivided into individual lots as VACC intended. Over the following eight months, VACC, the City of Mesa, and D.R. Horton worked to amend the Plat to permit the sale of individual lots. D.R. Horton eventually contracted with VACC to purchase the lots in installment contracts, rather than as a one-time purchase.

¶7            Before the City of Mesa's approval of the amended Plat, in January 2015, VACC made a claim under the Policy, asserting that the Property was unmarketable and seeking to recover the costs associated with amending the Plat. CTIC investigated the claim and denied coverage based on its view that the Property was marketable. VACC sued CTA and CTIC seeking compensatory and punitive damages for alleged breach of the Policy, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and bad faith.

¶8            After discovery, CTIC and CTA filed a joint motion for summary judgment arguing that title was marketable and that the Policy excepted from coverage any costs arising from amending the Plat. Additionally, they argued that CTIC's denial of coverage was reasonable. In a separate motion, CTA also argued that it should be dismissed from the litigation because it was not a party to the Policy. The superior court granted CTA's motion and granted summary judgment in favor of CTIC on VACC's bad faith and fiduciary duty claims. But the court denied CTIC's request for summary judgment on VACC's contract claim, finding that there were issues of fact regarding (a) the parties' reasonable expectations under the Policy and (b) on the marketability of the Property.

¶9            CTIC moved for reconsideration on the contract claim, asserting that an analysis of the parties' "reasonable expectations" is only relevant in the context of a non-negotiated contract. The superior court granted the motion, agreeing with CTIC's position that the reasonable expectations doctrine did not apply given evidence that the parties negotiated the contract. The court further determined that the lease restriction in the Plat did not make the Property unmarketable.

¶10 VACC timely appealed the superior court's final judgment in favor of CTIC and CTA. We have jurisdiction under A.R.S. § 12-2101(A)(1).[1]

## DISCUSSION

¶11 The superior court properly grants summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo and may affirm if the decision is correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

## I. Summary Judgment for CTA.

¶12 VACC challenges entry of summary judgment in favor of CTA on its claims for (1) breach of contract, (2) breach of good faith and fair dealing, (3) breach of fiduciary duty, and (4) bad faith. VACC contends that each of these claims arise out of the Policy, and that CTA's alleged breaches are actionable under the Policy.

¶13 The Policy is a contract for title insurance. *See* A.R.S. § 20-1562(11). And because all VACC's claims are premised on the rights and obligations created by the Policy, VACC was required to show that CTA was a party to that contract. *See Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 28, ¶ 7 (App. 2011). VACC argues that its claims against CTA are actionable because (1) the purchase agreement designated CTA as the escrow agent, (2) CTA created a title commitment, (3) CTA procured the Policy from CTIC, and (4) CTA's name appeared in the Policy. But the Policy was issued and executed by CTIC, not CTA, and VACC admitted in superior court that CTA was not a party to the agreement. Although CTA's name appeared on one page of the Policy, it was not a party to the contract, and VACC's claims against CTA thus fail. *See id.*

¶14 VACC alternatively argues that CTA is liable under the Policy as CTIC's agent. But even assuming an agency relationship existed, CTA may be liable on this basis only if CTA suggested that it (rather than CTIC) was the title insurer or concealed the existence and identity of the actual title insurer, CTIC. *See Cahn v. Fisher*, 167 Ariz. 219, 221 (App. 1990) (noting that, "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract") (alteration in original and citation omitted). Here,

---

[1] VACC's opening brief contains 15,000 words, with additional pasted pdfs containing extensive quoted text. Under ARCAP 14 an opening brief is limited to 14,000 words. Nevertheless, we accept the brief as filed.

there was no question that VACC was aware that CTIC was the title insurer and the party with which VACC entered the contract. VACC countersigned the Policy with CTIC and negotiated with CTIC's representatives. Accordingly, the superior court did not err by granting summary judgment in favor of CTA.

## II.     Summary Judgment for CTIC.

¶15     VACC argues the superior court erred by granting summary judgment to CTIC, asserting that CTIC was liable for breach of the Policy for failing to cover the costs associated with amending the Plat and that CTIC's denial of coverage was a breach of its fiduciary duty and made in bad faith.

### A.     Breach of Contract.

¶16     The interpretation of a title insurance policy is a question of law. *First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 350, ¶ 8 (2016). We review interpretation of title insurance contracts de novo, and we construe the terms of a contract according to their plain meaning. *Id.*

¶17     VACC's main contention is that title to the Property was unmarketable because the lease restriction in the Plat did not allow for the sale of individual lots and, that the Policy covered costs incurred because of such unmarketability. But the Policy did not provide insurance for a specific use and instead insured title *subject to* the conditions in the Plat.

¶18     VACC has not asserted that anyone else claimed an ownership interest in the Property, or that anything prevented VACC from conveying the same interest it acquired when it purchased the Property. Instead, VACC argues that the CC&Rs' restrictions, as incorporated into the Plat, rendered the Property unmarketable for the use VACC intended. But as the superior court correctly noted, "VACC could . . . have sold the Property in the same manner that it acquired it," and VACC's hope, or even expectation, that the property could be marketed for a use inconsistent with the Plat is not what was insured under the Policy. Because the CC&Rs stated that the intended use of the Property was to "lease portions of the lots to be used as sites for residential dwellings," VACC had to amend the Plat to remove that restraint. But the Policy expressly excluded "loss or damage, and . . . costs, attorneys' fees or expenses that arise" because of "easements, covenants, conditions, and restriction as set forth on the plat." Thus, the superior court properly rejected VACC's marketability claim.

**¶19** VACC alternatively argues that the Plat violated city ordinances because the city required an amendment to the Plat to sell the lots individually. But the City of Mesa never stated that the Plat violated any ordinance, and the Policy only insured against recorded violations; any other violations were excepted. Moreover, it was VACC's proposed change in use that required an amendment to the Plat—which is distinct from a preexisting violation of city ordinances. Accordingly, even on this theory, the Policy excepted from coverage the costs VACC incurred amending the Plat.

**¶20** VACC also argues that, under the "reasonable expectations" doctrine, the parties' intent controls, and that here, the parties intended that the Policy would cover VACC's ability to sell the Property in individual units. But the reasonable expectation doctrine applies only when there is a standardized non-negotiated contract. *See Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 271–72 (1987). This doctrine "relieves an insured from 'certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them.'" *State Farm Fire & Cas. Ins. Co. v. Grabowski*, 214 Ariz. 188, 192, ¶ 14 (App. 2007) (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 394 (1984); and then citing Restatement (Second) of Contracts § 211 (1981)). Here, VACC reviewed the exceptions to coverage. VACC requested (and was granted) specific changes to certain exceptions and requested (and was granted) the removal of some exceptions in the Policy. Because the Policy was a negotiated agreement, the reasonable expectations doctrine does not apply and the Policy terms control, excluding VACC's claims of coverage as set forth above. *See id.* at 193, ¶¶ 16–17 (describing the reasonable expectations doctrine as protecting against overreach when the signing party did not receive full and adequate notice of an exclusion).

**¶21** VACC's final arguments relate to an alleged "no-man's" land that was created because of inconsistent uses of the terms "units" and "lots" in the Plat. Although the Plat accurately described the entire Property, VACC asserts that the use of the terms "lots," "units," and "parcels" interchangeably in the Plat was improper and left portions of the Property inaccessible. VACC also argues for the first time on appeal that because of the inconsistencies in the Plat, the property was not delivered in the same manner as described in the Policy, and that the survey endorsement, as well as the subdivision and contiguity endorsements to the Policy should have covered the costs incurred as a result of being required to amend the Plat. Even assuming these arguments were not waived, *see Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 501 (App. 1992), they raise claims that are excepted from coverage.

¶22        VACC conflates the creation of the Plat with the contents of the Plat.  The Plat was properly created, accepted by the city, and recorded.  Moreover, VACC admits that there was nothing legally deficient with the original Plat; VACC's complaint is that the Plat's contents were inconsistent, leaving portions of the Property unconveyed.  VACC asserts that, to correct the deficient conveyance, a quit claim deed from the prior owner was required.  But VACC did not and does not now assert that this issue resulted in any damages, and absent damages, VACC does not have a claim for breach of the Policy on this basis.  *See Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30 (App. 2004).  And even assuming VACC suffered some degree of damages, those damages resulted from conditions in the Plat, and as stated above, any such deficiencies were excluded from coverage.

¶23        VACC also argues that title was not delivered as described in Schedule A of the purchase agreement.  The Policy insured against title "being vested other than as stated [in] Schedule A."  Schedule A described the Property as "Units 1001 through 1180, inclusive and Units 1187 through 1375 inclusive, and Tracts A through J, inclusive, Villages at Country Club Amended," of the recorded Plat.  The recorded warranty deed also described the Property as "Units 1001 through 1375, inclusive, Tracts A through J, Final Plat of VILLAGES AT COUNTRY CLUB AMENDED."  Because Schedule A and the warranty deed contain the same legal description, VACC was vested with exactly what was stated in Schedule A and there was no covered loss.

¶24        VACC further asserts that the endorsements to the Policy insured against costs arising from amending the Plat.  The basis for this argument is the discrepancies in the Plat.  But the endorsements insured against portions of the Property being improperly subdivided and not contiguous, and specifically provided that they did not "modify any terms and provisions of the policy."  And because the Policy excluded from coverage costs arising out of the Plat, the endorsements are inapplicable.

## B.     Bad Faith.

¶25        VACC argues that the superior court erred by entering summary judgment on its bad faith, breach of fiduciary duty, and breach of good faith and fair dealing claims, asserting that factual issues precluded summary judgment.

¶26        All of these claims turn on whether CTIC acted in bad faith because under these circumstances, bad faith is intertwined with the duty

7

of good faith and fair dealing. *See Clearwater v. State Farm Mut. Auto. Ins. Co.*, 164 Ariz. 256, 258 (1990); *see also Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 582, ¶ 8 (App. 2001). To establish insurance bad faith, the insured must show the absence of a reasonable basis for denying coverage under the policy. *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190 (1981). The tort only arises when "an insurance company intentionally denies or fails to process or pay a claim without a reasonable basis for such action." *Aetna*, 161 Ariz. at 440 (citation omitted). Moreover, the insurer is not liable for bad faith—even if ultimately wrong on coverage—when there was a reasonable basis for denying coverage. *Id.*

**¶27** Although a bad faith claim may be not appropriate for summary judgment because of factual disputes, "there are times when the issue of bad faith is not a question appropriate for determination by the jury." *Aetna Cas. & Sur. Co. v. Superior Court*, 161 Ariz. 437, 440 (App. 1989). Here, VACC's initial claim was for (1) a defect in title because a document affecting title was not properly created, (2) unmarketable title, and (3) the violation of an ordinance relating to the occupancy, use, or enjoyment of the land. CTIC investigated by contacting the City of Mesa, and city officials informed CTIC that the Plat was not in violation of its ordinances. Additionally, because the unmarketability arose from the Plat, as discussed above, CTIC reasonable and correctly determined that the claim was excluded from coverage. CTIC denied VACC's claims after a reasonable investigation and had a reasonable basis for doing so. *See Noble*, 128 Ariz. at 190. Accordingly, the superior court did not err by entering summary judgment in favor of CTIC.

## CONCLUSION

**¶28** The superior court's judgment is affirmed.

**¶29** All three parties request attorney's fees on appeal under A.R.S. § 12-341.01. VACC has not prevailed, so we deny its request. In an exercise of our discretion, we award CTIC and CTA their reasonable attorney's fees upon compliance with ARCAP 21. As the prevailing parties, CTIC and CTA are entitled to an award of costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

