NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

DR. ROBERT G. GRIEGO, an individual; DR. MICHAEL J. RADCLIFFE,
an individual; DR. PHILIP MOOBERRY, an individual; DR. ROY
DANIELS, an individual, TENA DISCHLER, an individual; and
TIMOTHY J. STEPHENSON, an individual, *Plaintiffs/Appellants*,

*v.*

ARIZONA DENTAL ASSOCIATION, an Arizona non-profit corporation;
DR. BRIEN HARVEY and JANE DOE HARVEY, husband and wife; DR.
BRYAN SHANAHAN and JANE DOE SHANAHAN, husband and wife;
and DR. BRIAN WILSON and JACKIE WILSON, husband and wife,
*Defendants/Appellees*.

No. 1 CA-CV 12-0879
FILED 10-28-2014

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2010-032594
The Honorable Mark H. Brain, Judge

**AFFIRMED**

———————————————

COUNSEL

Stinson Leonard Street, L.L.P., Phoenix
By Michael C. Manning, Larry J. Wulkan, Jennifer L. Allen
*Counsel for Plaintiffs/Appellants*

Jaburg & Wilk, P.C., Phoenix
By Kraig J. Marton, David N. Farren
*Counsel for Defendant/Appellee Arizona Dental Association*

Smith L.C., Phoenix
By Richard R. Thomas, Stephen C. Biggs
*Counsel for Defendants/Appellees Harvey, Shanahan and Wilson*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**B R O W N**, Judge:

¶1          Plaintiffs, six former members of the Board of Directors for Delta Dental of Arizona ("Delta Dental"), appeal from the trial court's summary judgment in favor of defendant Arizona Dental Association ("AzDA") on Plaintiffs' claims of defamation, false light, injurious falsehood, and intentional interference with business relationships. Plaintiffs also appeal the court's denial of their motion for relief from judgment pursuant to Arizona Rules of Civil Procedure ("Rule") 60(c).  For the following reasons, we affirm.

**BACKGROUND**

¶2          Delta Dental is Arizona's largest dental insurance company. In 2010, three of the Plaintiffs lost their bids for re-election to Delta Dental's Board and the other three resigned prior to or at the annual meeting.

¶3          Following the election, Plaintiffs sued three of their Delta Dental Board successors - Brien Harvey, Bryan Shanahan, and Brian Wilson ("Individual Defendants") – all of whom are also members of AzDA.

2

Although the memberships of Delta Dental and AzDA substantially overlap, they are unrelated entities.

¶4    According to Plaintiffs, from January through April 2010, the "AzDA leadership led a campaign to smear [the Delta Dental Board], with an emphasis on destroying the reputation of Dr. Griego." At that time, Griego was Delta Dental's Board chairman and the leader of a group of "Concerned Dentists" who had called on AzDA officers to resign due to alleged mismanagement and impropriety. Roy Daniels, Philip Mooberry, and David Dischler were also Concerned Dentists.

¶5    Plaintiffs asserted that AzDA leadership used "AzDA forms, membership lists, and AzDA events and meetings to spread false and defamatory information" about the Delta Dental Board and its members. The alleged "attacks" were "[l]ed by their President-elect (Defendant Shanahan)" and "other former presidents and influential leaders of AzDA." Harvey and Wilson are former AzDA presidents. Plaintiffs also claimed that Individual Defendants, along with other members of AzDA leadership and individuals associated with the AzDA, distributed a memorandum ("Talking Points") to AzDA members. The Talking Points identified the following as "[g]rave concerns:"

- "Current Board has engaged in 'self-dealing' in business relationships thus awarding certain board members with personal financial benefit."

- "Current Board changed the Bylaws of the Corporation to eliminate Term Limits leading to their perpetual control."

- "Current Board . . . has voted themselves a pay raise this last year and approximately a 350% pay increase over the last 5 years . . . ."

- "The Chairman's compensation was raised over 450%."

- "Board members currently are compensated at a level close to $40,000.00 per year, for an average of 5 board meetings and 5 committee meetings, . . . These compensation levels are the highest of any Delta in the country."

- "Current Board is exclusively the Chairman's hand-picked candidates seemingly loyal to him at the exclusion of what's best for the Corporation . . . others . . . have been warned not to challenge him."

- "There is presently no effective control over this Board by the Delta membership. They hold themselves above accountability by using proxy votes from uninformed members."

The Talking Points also urged members to use proxy forms and return them to Harvey. It concluded: "With your help, we will: Reinstitute Term Limits . . . Reduce Board Compensation . . . Restore Accountability . . . Let's Give Delta Back to the Member Dentists."

¶6     According to Plaintiffs, Individual Defendants used "AzDA letterhead, mailing lists, email lists, and fax numbers to assist in soliciting proxy votes and spreading false and defamatory statements" concerning Delta Dental's Board. With AzDA's encouragement, Individual Defendants also "maliciously communicated false and defamatory information" at official AzDA functions. Such publications occurred during March and April 2010 at meetings of the Southern Arizona Dental Society ("SADS") and the Central Arizona Dental Society ("CADS"), two of AzDA's component organizations, and at the annual convention.

¶7     Plaintiffs also claimed that AzDA leadership "solicited proxy votes to replace four members" without disclosing that Delta Dental's bylaws allowed "AzDA leadership [to] replace the four directors up for reelection and remove any other directors they wished to eliminate from the Delta Board." Individual Defendants then "effectively removed 11" of the 13 Delta Dental Board members, including all but one of the Concerned Dentists on the Board.

¶8     Plaintiffs filed suit and, as pertinent here, alleged claims for defamation, false light, injurious falsehood, and intentional interference with business relationships. AzDA and Individual Defendants moved for summary judgment. The trial court granted summary judgment in favor of AzDA only and certified the order as appealable under Rule 54(b). Plaintiffs timely appealed.

¶9     Plaintiffs then obtained a stay of the appeal from this court and filed a motion for Rule 60(c) relief in the trial court. According to Plaintiffs, AzDA and Wilson failed to disclose evidence that would have

allowed Plaintiffs to defeat the motion for summary judgment. The trial court denied the Rule 60(c) motion and Plaintiffs filed a timely notice of supplemental appeal.

## DISCUSSION

**¶10**         As an initial matter, Individual Defendants argue that we lack jurisdiction because the trial court improperly certified the judgment against AzDA as final under Rule 54(b), which provides that a court "may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." We review this issue de novo. *Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 304, 812 P.2d 1119, 1122 (App. 1991).

**¶11**         Rule 54(b) is not limited to certifications of claims; it also allows certification with respect to fewer than all parties. *Id.*; *see generally Sw. Gas Corp. v. Irwin ex rel. Cochise County*, 229 Ariz. 198, 202, ¶ 10, 273 P.3d 650, 654 (App. 2012). Based on our analysis and resolution of the issues raised by Plaintiffs in this appeal, Plaintiffs' claims against AzDA are separable "such that no appellate court would have to decide the same issues . . . if there are subsequent appeals." *See Cont'l Cas. v. Superior Court*, 130 Ariz. 189, 191, 635 P.2d 174, 176 (1981). Therefore, we have jurisdiction over Plaintiffs' appeal from the order granting summary judgment as well as the order denying Plaintiff's motion for Rule 60(c) relief.

### I.   Liability of AzDA

**¶12**         A court shall grant summary judgment when "there is no genuine dispute as to any material fact and [] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the grant of summary judgment de novo, *Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 17, 83 P.3d 56, 60 (App. 2004), and examine the record in the light most favorable to the non-moving party. *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13, 38 P.3d 12, 20 (2002).

**¶13**         Plaintiffs' claims against AzDA are based on actions by its individual agents, by virtue of actual authority, and its provision of a forum for the alleged defamatory statements. Specifically, Plaintiffs contend AzDA executives were involved in the creation of the Talking Points and that AzDA used its resources to disseminate the memorandum.

### A. Agency

**¶14** "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 29, ¶ 12, 270 P.3d 852, 856 (App. 2011) (applying Restatement (Third) of Agency § 1.01 (2006)). The issue of agency poses a question of fact, but may be resolved as a matter of law when there is "no competent evidence legally sufficient to prove it has been introduced" and "the material facts from which it is to be inferred are undisputed and only one conclusion can be reasonably drawn therefrom." *Id*. at 30, ¶ 15, 270 P.3d at 857 (internal quotation omitted).

**¶15** A corporation's agents may bind the corporate principal when acting "within the scope of their authority, actual or apparent." *Best Choice Fund, L.L.C. v. Low & Childers, P.C.*, 228 Ariz. 502, 510-11, ¶ 26, 269 P.3d 678, 686-87 (App. 2011). Because Plaintiffs' opening brief does not properly address apparent authority, we confine our discussion to actual authority.[1] *See State ex rel. Montgomery v. Mathis*, 231 Ariz. 103, 124, ¶ 82, 290 P.3d 1226, 1247 (App. 2012); *see generally* ARCAP 13(a)(5), (6).

**¶16** Actual authority derives from "express authority," or implicitly from the agent's "reasonable interpretation of the principal's manifestation" of authority. Restatement (Third) of Agency § 2.01 cmt. b (2006); *Goodman*, 229 Ariz. at 29, ¶ 12, 270 P.3d at 856 (explaining an agent holds express authority "if there is evidence that the principal has delegated authority by oral or written words which authorize him to do a certain act or series of acts") (internal quotation omitted). As relevant here, a "principal is subject to direct liability to a third party harmed by an agent's conduct" when "the agent acts with actual authority or the principal ratifies the agent's conduct" and "the agent's conduct is tortious, or the agent's conduct, if that of the principal, would subject the principal to tort liability[.]" Restatement (Third) of Agency § 7.03 (2006).

---

[1] Plaintiffs make a fleeting reference to "apparent authority" in their opening brief, but the argument is framed only in the context of AzDA employees acting within the scope of their employment. Therefore, to the extent apparent authority has any applicability in this case, we consider it as part of our analysis of liability based on the theory of respondeat superior. *See infra* ¶¶ 27-31.

### 1.    Express Authority

**¶17**      Nothing in AzDA's bylaws expressly authorizes its Board members to participate in outside election campaigns on AzDA's behalf. Instead, Sections 2 and 4(D) of Article VIII permit the Board to act only through a majority of voting members. *See also* A.R.S. § 10-3140(2) (a)-(b) (defining an action of a board of directors as one taken through a majority vote by a quorum or unanimous written consent). It is undisputed that the minutes of AzDA's Board meetings reflect no authorizations pertaining to the Delta Dental election.

**¶18**      Similarly, it is insufficient to rely, as Plaintiffs do, on the fact that Individual Defendants held leadership positions within AzDA. "Directors, in the ordinary course of their service as directors, do not act as agents of the corporation[.]" *See Arnold v. Soc'y for Savs. Bancorp, Inc.*, 678 A.2d 533, 539-40 (Del. 1996). Therefore, mere evidence that a person served as an AzDA director does not establish the required connection to prove that the director acted pursuant to actual AzDA authority when creating or distributing the Talking Points.

### 2.    Implied Authority

**¶19**      Unlike actual authority, implied authority may exist "whether or not the parties understood it to be an agency" and in the absence of an express contract. *Canyon State Canners, Inc. v. Hooks*, 74 Ariz. 70, 73, 243 P.2d 1023, 1024 (1952). But this record fails to support any reasonable inference that AzDA authorized or permitted Individual Defendants to create or distribute the Talking Points or that any Individual Defendant reasonably interpreted any AzDA manifestation as authorizing those activities.

**¶20**      Individual Defendants avowed that they distributed the Talking Points to other Delta Dental dentists in Arizona on their own behalf and outside of AzDA meetings. An e-mail from Harvey indicates he edited the Talking Points and solicited input from others, including Shanahan, on April 13, 2010. The record, however, discloses no material facts, or reasonable inferences therefrom, attributing such actions to AzDA.

**¶21**      Although Shanahan was president-elect and vice president of AzDA, he denied asking any AzDA official for permission or cooperation in distributing the Talking Points. He maintained that he intended to act at all times on his own behalf and as a Delta Dental member. Jason Dittberner, who is Shanahan's business partner and the Northern Arizona Dental Society ("NADS") president, confirmed that Shanahan never did or said

anything in their communications to indicate he was acting as an AzDA Board member. Moreover, Shanahan avowed that AzDA and its Board had no role in the 2010 Delta Dental election, took no position on who should win, provided no support for or against a candidate, and did not allow Delta Dental campaign activities during official meetings.

¶22        An e-mail from Harvey to "Jason et al." regarding "proxymailingedit6" discusses editing the Talking Points with a view to points that will "resonate" with the "clueless masses." Harvey avowed, however, that no one from AzDA ever requested, in an official capacity, that he or anyone else do anything in connection with the campaign. Wilson and Harvey also avowed they were unaware of any involvement by AzDA or its Board in the 2010 election.

¶23        Other individuals who distributed the Talking Points also denied receiving support from AzDA. Randolph Snyder, an AzDA member and a Delta Dental provider, testified that he sent out the Talking Points to dentists in Yuma after Harvey asked him to be the "go to person" for the election. According to Snyder, AzDA did not tell him how to vote, nor did it provide any literature, money, or support for his activities. Dittberner presided over the March 2010 meeting of NADS, another AzDA component organization, and maintained that no discussion about the election occurred and no materials were distributed.

¶24        Similarly, AzDA's immediate past president, Donald Simpson, sent the Talking Points to two providers in Cochise County. Each time he communicated with another member, he clarified that he was not acting as a Delta Dental member or an AzDA member, or as an AzDA official. Simpson also denied that AzDA took a position on the election or contributed its resources. Simpson added that "we'd stop it immediately" whenever anyone attempted to discuss the election at an AzDA meeting.

¶25        Finally, an admitted author of the Talking Points, David Day, denied any understanding that he acted on behalf of AzDA or at its direction. AzDA refused Day's request for help in the election. Likewise, Gary Jones distributed the Talking Points, but not at AzDA's direction or through an AzDA meeting.

¶26        Given this uncontroverted evidence, the trial record reveals no genuine dispute of material fact that AzDA expressly or impliedly authorized any person to create or distribute the Talking Points. In the absence of such a dispute, the trial court properly determined that as a matter of law AzDA is not liable to Plaintiffs under either theory of agency.

8

### B.    Respondeat Superior

**¶27**    Plaintiffs argue that AzDA is vicariously liable for defamation and interference with business relationships based on the acts of its officers and directors who created and distributed the Talking Points. However, Plaintiffs rely only on the evidence discussed above that they contend supports a finding of agency.  Regardless, the only individual named in the complaint who could render AzDA liable under the theory of respondeat superior is Kevin Earle, AzDA's executive director.

**¶28**    Under the respondeat superior doctrine, an employer may be held vicariously liable for the negligent acts of its employee acting within the course and scope of employment.  *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 540, ¶ 17, 5 P.3d 249, 254 (App. 2000); Restatement (Third) of Agency § 7.07(1) (2006).

**¶29**    To overcome the summary judgment motion, Plaintiffs were required, as an initial matter, to make a prima facia showing that Earle committed a negligent act.  Thus, Plaintiffs had to present evidence that (1) Earle defamed Plaintiffs by publishing a false and defamatory statement either knowing the statement was false, in reckless disregard of the statement's character, or negligently failing to ascertain the statement's character; or (2) Earle interfered with business relationships by intentionally and improperly causing the termination of a valid and known business expectancy.  *See Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977) (outlining the elements of defamation); *Neonatology Assoc. Ltd v. Phoenix Perinatal Assoc. Inc.*, 216 Ariz. 185, 187, ¶ 7, 164 P.3d 691, 693 (App. 2007) (setting forth elements of interference with business relationship).

**¶30**    Plaintiffs contend that four e-mails link Earle to the Talking Points memo.  The first email, dated February 23, 2010, reflects the transmittal of a Form 990 containing Delta Dental Board salary information to Shanahan and Hughes but does not mention the Talking Points.  Another message from Earle to Shanahan in December 2009 stated: "I am thinking Bernie [Glossy] can be a source a [sic] valuable information to support a coups d'etat."  The third e-mail was Earle's communication to Individual Defendants regarding information in the Talking Points, but it stated that participants in a CADS meeting are not permitted to discuss the Delta Dental election.  A fourth e-mail from Glossy to Earle noted: "Here are the pages on the Bylaws regarding election of members.  Good luck with the conference and see you Wed[nesday]."

**¶31**        None of this evidence establishes, or supports any reasonable inference, that Earle committed defamation or any other tort against the Plaintiffs through his involvement with the Talking Points.[2]  Plaintiffs do not contest that the information Earle supplied regarding salaries and bylaws was accurate and there is no claim that he suggested the information should be presented falsely.  Nor do Plaintiffs' contend that any other statement Earle made regarding the Delta Dental election was false.  As a result, the respondeat superior claim against AzDA fails.

### C.        Providing a Forum

**¶32**        Plaintiffs also contend that AzDA is liable for defamation because some of the Talking Point statements were discussed at meetings of AzDA or its component organizations, including CADS, NADS, and SADS.  In essence, they seek to hold AzDA liable for providing a forum at which such issues were allegedly raised.

**¶33**        Plaintiffs, however, have failed to show a material dispute of fact exists as to whether such discussions even occurred.  AzDa submitted affidavits of Swagger, Greco, and Davis confirming that any Talking Points discussions occurred before or after meetings of AzDA's component organizations (CADS, SADS, and NADS).  According to Earle, AzDA members "were told that [AzDA] had taken no position on the Delta Election, and they were not to discuss the Delta Election during [AzDA] meetings."

**¶34**         Nor do we find persuasive Plaintiffs' reliance on deposition testimony from Mark Hughes, former AzDA president.  Hughes stated that while he was president and president-elect, neither AzDA nor its Board "had any role in the Delta Dental election in April 2010. [AzDA] did not provide any support for or against any candidate.  To my knowledge AzDA did not at any time allow campaign activities to occur during its official meetings."  Hughes, who attended all but one AzDA meeting during his term, testified further that AzDA took no action on the Delta Dental election and he never authorized the use of any money to influence it.  Plaintiffs

---

[2]        Plaintiffs failed to develop, and have therefore waived, their general assertion relating to interference with a business expectancy.  *See* ARCAP 13(a)(6) (requiring a party to support an argument with the "reasons therefor, with citations to the authorities, statutes and parts of the record relied on"); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (holding that a party waived an issue by only mentioning it in a cursory manner and failing to develop the argument).

contend that Hughes' testimony must be taken in context, and that his deposition testimony necessarily reflects AzDA involvement. To the contrary, the cited testimony reflects Hughes' awareness of the Talking Points' development by certain individuals but does not create a reasonable inference of AzDA involvement at official meetings or otherwise.

¶35         Likewise, Plaintiffs cite a March 17, 2010 e-mail in which Harvey stated to four dentists that they should attend a SADS meeting and "be sure to all sit at different tables to maximize our presence and influence." But on the same day, Earle admonished against discussion of the Delta Dental election at that meeting: "We are definitely NOT going to be part of the official business. As questions arise at the tables, we will answer as individuals." Viewed together, these instructions encouraged the dentists to use their influence to gain support for the election, but only by acting in their individual capacities, not as representatives of AzDA. Therefore, we affirm the trial court's summary judgment on this claim.

## II.   Rule 60(c)

¶36         Plaintiffs also challenge the trial court's denial of their motion for relief under Rule 60(c)(2) and (3). We will affirm a Rule 60(c) ruling absent an abuse of discretion. *Tovrea v. Nolan*, 178 Ariz. 485, 490-91, 875 P.2d 144, 149-50 (App. 1993).

¶37         Plaintiffs rely primarily on Rule 60(c)(3), which provides relief from a final judgment for  misconduct of an adverse party. To qualify for relief, Plaintiffs were required to show by clear and convincing evidence that they (1) had a meritorious claim, and (2) were prevented from fully presenting it before judgment due to the adverse party's misconduct. *See Estate of Page v. Litzenburg*, 177 Ariz. 84, 93, 865 P.2d 128, 137 (App. 1993). If the misconduct was not deliberate, they must have shown by a preponderance of the evidence that the action "substantially interfered with" their case preparation. *Id.*

¶38         As evidence of misconduct, Plaintiffs first argue AzDA failed to disclose an organizational e-mail address used by Earle prior to summary judgment. The record reflects, however, that AzDA disclosed e-mails listing this address in its Rule 26.1 disclosure statements. Because there was neither misconduct nor harm, the trial court did not abuse its discretion in refusing to reopen the judgment under Rule 60(c)(3). Alternatively, Plaintiffs contend that relief is warranted under Rule 60(c)(2) in light of the "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d)." Because the

AzDA e-mail address had been disclosed prior to judgment, Plaintiffs likewise were not entitled to Rule 60(c)(2) relief against AzDA.

¶39         Plaintiffs also contend they are entitled to relief because Wilson failed to produce 236 e-mails prior to summary judgment.  Even assuming that Wilson's conduct is relevant to the issues on appeal, Plaintiffs admit that only eight of the 236 "newly discovered" e-mails from Wilson had any material impact on the Plaintiffs' case against AzDA.  Moreover, only four of these documents were not in Plaintiffs' possession prior to the summary judgment briefing.

¶40         One of the four emails was sent by Wilson to Roger Briggs on January 14, 2010, stating that "[i]t's time for AzDA to organize and vote a new Delta board and especially remove Bob from the board . . . . I truly believe the Association [AzDA] has the where with all [sic] to start a grass roots campaign . . . ."  It is uncontroverted that, at the time of this communication, Wilson was not on AzDA's Board and his friend, Briggs, was on AzDA's Board but was not a Delta Dental provider.  A communication from a non-AzDA member to an AzDA Board member requesting action is not proof that AzDA became involved in the campaign.  Even if it were, Wilson was in no position to make any admission attributable to AzDA.  In any event, Briggs' averred that he never brought Wilson's request to the Board's attention.

¶41         Our review of the other three newly discovered e-mails likewise discloses no evidence that would preclude the grant of summary judgment.  *See Ashton v. Sierrita Mining & Ranching*, 21 Ariz. App. 303, 305, 518 P.2d 1020, 1022 (1974) (citation omitted) (explaining that courts will not reopen a judgment "if the evidence is merely cumulative and would not have changed the result").  Therefore, the trial court did not abuse its discretion in declining to vacate the judgment pursuant to Rule 60(c).

### III.  Attorneys' Fees and Costs

¶42         AzDA requests an award of its attorneys' fees incurred on appeal pursuant to Rule 11(a) (providing for sanctions against an attorney who has filed pleadings not grounded in law or for an improper purpose) and A.R.S. § 12-349 (providing for attorneys' fees against an attorney or party who brings a claim without substantial justification or for purposes of delay or harassment, unreasonably expands or delays the proceeding, or engages in abuse of discovery).  We do not agree that sanctions are warranted in this appeal and therefore we deny AzDA's request for fees.  As the prevailing party, however, AzDA is entitled to recover costs on

appeal upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure. We deny Individual Defendants' request for costs because they are not prevailing parties on appeal.

## CONCLUSION

¶43 We affirm the trial court's orders granting summary judgment and denying Rule 60(c) relief.



**Ruth A. Willingham** · Clerk of the Court
F I L E D : gsh