956 P.2d 537

**Raul GARCIA and Linda Garcia, husband and wife, Plaintiffs–Appellants,**

v.

**The FARMERS INSURANCE COMPANY OF ARIZONA, Defendant–Appellee.**

**No. 1CA–CV97–0235.**

Court of Appeals of Arizona, Division 1, Department E.

March 5, 1998.

The Ranger Law Firm by Edward M. Ranger, Scottsdale, for Plaintiffs-Appellants.

Broening Oberg Woods Wilson & Cass P.C. by James R. Broening and Michael M. Haran, Phoenix, for Defendant-Appellee.

OPINION

GERBER, Judge.

¶ 1   Raul and Linda Garcia ("Garcias") appeal the trial court's ruling that Farmers Insurance Company of Arizona ("Farmers") made a valid underinsured motorist ("UIM") offer as required under Arizona law.

**FACTUAL AND PROCEDURAL HISTORY**

¶ 2   Raul's daughter, Carolina Garcia, died in a one-vehicle rollover accident. Although the driver's insurer paid the policy limit of $25,000, the payment did not cover all of the damages.

¶ 3   At the time of the accident, Carolina lived with Raul and Linda Garcia.   Linda had an automobile insurance policy with Farmers with bodily injury limits of $100,000 per person.   The Garcias submitted a claim under the policy for $100,000 in UIM benefits.   They contended that because Farmers failed to offer UIM coverage to Linda as required by Arizona Revised Statutes Annotated ("A.R.S.") section 20-259.01(C), the maximum UIM coverage should be imputed into the policy.

¶ 4   Farmers asserted that it owed only $15,000 because Linda had signed a UIM election agreement for that amount.   Farmers claimed that its UIM offer satisfied the statutory requirement and moved for summary judgment on this basis.   The Garcias filed a cross motion for summary judgment.

¶ 5   The trial court first found that disputed issues of material fact existed, and it denied both motions.   The Garcias moved for reconsideration in light of *Tallent v. National Gen. Ins. Co.*, 183 Ariz. 304, 903 P.2d 612 (App.1995), which held that insurers must explain UIM coverage.   The trial court agreed and ruled that the Garcias were entitled to summary judgment because Farmers failed to explain UIM coverage in its offer.   However, before the court entered final judgment, the Arizona Supreme Court accepted review of this court's decision in *Tallent.*   The trial court delayed entry of final judgment pending the supreme court's decision.

¶ 6   In *Tallent v. National Gen. Ins. Co.*, 185 Ariz. 266, 915 P.2d 665 (1996), our supreme court vacated our prior decision and held that a valid UIM offer does not require an explanation of UIM coverage.   Based on this decision, Farmers renewed its motion for summary judgment to the effect that its UIM offer satisfied the statutory requirement.

¶ 7   The trial court then granted Farmers' motion and determined that its form satisfied *Tallent's* definition of "offer."   The Garcias appeal that judgment.

1.   The current version of this statute is A.R.S.

## DISCUSSION

¶ 8   Although the Garcias presented four issues for review, we need address only these two distinct issues:   (1) did Farmers satisfy the notice requirements of A.R.S. section 20-259.01(C) and (2) did Farmers' pre-selection of UIM coverage invalidate the UIM offer?

▮   ¶ 9   The Garcias first claim that Farmers provided an inadequate UIM offer, pursuant to A.R.S. section 20-259.01(C),[1] which provides:

> Every insurer writing automobile liability or motor vehicle liability policies . . . . shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsured motorist coverage . . . . in limits not less than the liability limits for bodily injury or death contained within the policy.

According to the Garcias, Farmers' election agreement form is deficient because it did not specify the limits of UIM coverage available to the insured and, unlike the offer made in *Tallent,* it did not provide a range of coverages and corresponding premiums.

¶ 10   The Supreme Court's *Tallent* decision only considered whether a valid offer was made without any explanation of UIM coverage.   *Tallent* applied the definition of "offer" found in general contract principles: "To bring to or before;   to present for acceptance or rejection;   to hold out or proffer;   to make a proposal to;   to exhibit something that may be taken or received or not."   *Id.* at 267-68, 915 P.2d at 666-67 (quoting BLACK'S LAW DICTIONARY 1081 (6th ed.1990)).   We likewise limit our analysis to whether such an offer was made.

¶ 11   Farmers' election agreement contained the following.   The sub-heading of the form states in bold capital letters:

**"ELECTION AGREEMENT REDUCING UNINSURED MOTORIST COVERAGE."**

¶ 12   The next statement on the form is: "I am selecting reduced Uninsured Motorist

section 20-259.01(B).

coverage limits of _____ per person and _____ per occurrence."

¶ 13 Next, the form states: "In consideration of the reduction of the premium, the Company and I agree that Uninsured Motorist Coverage shall apply in the above limits."

¶ 14 The form next states in bold capital letters: "THE STATE LAW REQUIRES THAT ALL MOTOR VEHICLE LIABILITY POLICIES PROVIDE UNDERINSURED MOTORIST PROTECTION UNLESS IT IS DELETED OR REDUCED BY AGREEMENT BETWEEN THE INSURED AND THE COMPANY."

¶ 15 Beneath was a statement adjacent to a box which read: "I reject Underinsured Motorist Coverage in full." Under that statement, without a box, was the sentence, "I realize the Underinsured Motorist Coverage may be written for limits as high as the Bodily Injury limits of my policy."

¶ 16 Next, a box allows the insured to reject UIM coverage. Another box reads: "I am selecting reduced Underinsured Motorist Coverage limits of: _____ per person and _____ per occurrence." The box was checked and "15,000" and "30,000" was handwritten in the respective spaces. Pursuant to its communications with Linda, Farmers had checked the box and filled in the blanks before mailing the form to Linda.

¶ 17 The last sentence on the form reads: "The options indicated above shall apply on this policy and future renewals or replacements of this policy issued to me, until I notify the Company in writing that a change is desired."

¶ 18 Linda signed the form and mailed it back to Farmers without question or complaint.

¶ 19 Farmers adequately offered UIM coverage. The election form did "bring before" and "hold out" to the Garcias that UIM coverage was available. The form referred to the applicable limits and indicated how the Garcias could change their policy. Nothing more is required under *Tallent. See id.,* at 268, 915 P.2d at 667 ("The statute requires an offer of UIM coverage—not a treatise on UIM coverage.").

¶ 20 The Garcias next argue that because Farmers sent Linda, at her request, an election agreement with UIM coverage limits filled in for $15,000 and $30,000 limits, its pre-selection of limits prevented Linda from purchasing UIM coverage equal to her bodily injury limits and therefore invalidated the offer. They claim that their situation is akin to *Giley v. Liberty Mut. Fire Ins. Co.,* 168 Ariz. 306, 306, 812 P.2d 1124, 1124 (App. 1991).

¶ 21 In *Giley,* the agent handed the insured a form, asked her to sign it if she wanted coverage, and then kept the form in the company files. The insured did not know that the form contained a written offer of UIM coverage. The *Giley* court held that an issue of fact existed as to whether "the insurer offer[ed] such coverage in a way reasonably calculated to bring to the insured's attention that which is being offered."

¶ 22 Unlike *Giley,* Farmers did not withhold information from the Garcias. It mailed them a form that explained that UIM coverage was available and in certain amounts of their choosing. The Garcias were not pressured to quickly sign and return the form. Instead, Linda kept the form for about two weeks before signing and returning it.

¶ 23 Had the Garcias desired the maximum UIM coverage beyond what they requested they could have brought the matter up with Farmers. *Tallent,* 185 Ariz. at 268, 915 P.2d at 667 (ruling that the form "certainly seem[ed] sufficient to cause any insured . . . who has questions about the meaning of UM or UIM coverages to ask for an explanation."). Moreover, the form stated, "I realize the Underinsured Motorist Coverage may be written for limits as high as the Bodily Injury limits of my policy." Linda's signature on the form indicates that she understood and agreed to its terms, that is, she knew of the higher limits and rejected them. *See Chambers v. Owens,* 22 Ariz.App. 175, 178, 525 P.2d 306, 309 (1974) (because insured signed a written insurance agreement he effectively rejected UM coverage), *overruled on other grounds by Calvert v. Farmers Ins. Co. of Arizona,* 144 Ariz. 291, 295, 697 P.2d 684, 688 (1985).

¶ 24 We conclude that, while it is no drafting paragon, the Farmer's form was an adequate offer. Further, the pre-selected UIM limits did not negate the UIM offer because (1) the Garcias should have inquired further if they had questions about their requested UIM coverage, and (2) the signed statement indicates that they understood and agreed to the election agreement terms.

## CONCLUSION

¶ 25 For these reasons we affirm the trial court's ruling. Additionally, we grant Farmers attorneys' fees incurred on appeal pursuant to A.R.S. section 12–341.01 in an amount determined upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure. We do not grant Farmers' requests for attorneys' fees incurred at the trial court because it failed to make such a request at the trial level. *See Lacer v. Navajo County,* 141 Ariz. 392, 395, 687 P.2d 400, 403 (App.1984).

THOMPSON, J., concurs.

FIDEL, Presiding Judge, dissenting:

¶ 26 The majority concludes that Farmers met its statutory obligation to offer Linda Garcia underinsured motorist coverage in limits equal to the liability limits of her policy. I respectfully disagree.

¶ 27 An appropriate offer need not "contain an explanation of the nature of UIM coverage." *Tallent,* 185 Ariz. at 267, 915 P.2d at 666. It must, however, "offer UIM coverage 'in a way reasonably calculated to bring to the insured's attention that which is being offered.'" *Id.* (quoting *Giley v. Liberty Mut. Fire Ins. Co.,* 168 Ariz. 306, 306, 812 P.2d 1124, 1124 (App.1991)). The offer in *Tallent* unquestionably met this standard; the present offer did not.

¶ 28 The *Tallent* form (Appendix A to that opinion) instructed the insured to select, by checking one of several boxes, from a series of options ranging from minimum to intermediate to maximum UIM coverage, and the form specified the premium to be paid for each. An insured presented with that form could have selected maximum cov-

erage for a specified premium simply by checking the appropriate box.

¶ 29 Perhaps, as the majority concludes, the *Tallent* form provided more information than was statutorily required. Perhaps it was merely useful and not essential for the insurer to specify a range of coverage options and tell its customer what each option cost. But on the present form (Appendix A to this dissent), not only did Farmers disclose no premiums and specify no intermediate range of coverage options; more significantly, Farmers provided *no box whatsoever* that an insured could check to request maximum UIM coverage—coverage as high as the bodily injury limits of the policy. Farmers provided only two options: one box to select reduced UIM coverage, another to refuse it altogether.

¶ 30 Farmers did, as the majority points out, print the following acknowledgment within the body of its form: "I realize that Underinsured Motorist Coverage may be written for limits as high as the Bodily Injury limits of my policy." This acknowledgment, however, is curious in several respects. First, it represents that higher UIM coverage "may be written," but neither specifies that Farmers will write it nor that the customer may buy it. Second, Farmers placed the acknowledgement in the portion of the form that accompanies the box to be checked by insureds who reject UIM coverage altogether. Farmers required no such acknowledgment from insureds such as Ms. Garcia who checked (or for whom Farmers checked) the box for reduced UIM coverage. And finally, to reiterate, Farmers provided no box at all that an insured might check to purchase UIM coverage in the bodily injury amount.

¶ 31 The majority quotes *Tallent* for the proposition that "a treatise on UIM coverage is not required." I agree. But an offer is required. And in my judgment, Farmers' obscure allusion to higher limit UIM coverage did not constitute a written offer, much less an offer phrased "in a way reasonably calculated to bring [it] to the insured's attention." *Giley,* 168 Ariz. at 306, 812 P.2d at 1124.

## APPENDIX
## UNINSURED AND UNDERINSURED MOTORIST
## ELECTION AGREEMENT — AUTO

| STATE | POLICY NUMBER | EFFECTIVE DATE | | | DISTRICT | AGENT |
|---|---|---|---|---|---|---|
| 8 | 1 2 1 2 3 0 1 1 5 | MO 6 | DAY 10 | YR 88 | 13 | 331 |

NAME  Linda L. Garcia

### ELECTION AGREEMENT REDUCING UNINSURED MOTORIST COVERAGE

I have had the coverage of Uninsured Motorist protection explained to me. The opportunity to purchase this coverage in an amount up to my automobile liability limits has been provided.

☑ I am selecting reduced Uninsured Motorist coverage limits of 15,000 per person and 30,000 per occurrence.

In consideration of the reduction of the premium, the Company and I agree that Uninsured Motorist Coverage shall apply in the above limits.

These limits shall apply until I notify the Company in writing that a change is desired.

1/20/88
DATE

$ Linda L Garcia
INSURED'S SIGNATURE

THE STATE LAW REQUIRES THAT ALL MOTOR VEHICLE LIABILITY POLICIES PROVIDE UNDERINSURED MOTORIST PROTECTION UNLESS IT IS DELETED OR REDUCED BY AGREEMENT BETWEEN THE INSURED AND THE COMPANY.

☐ I reject Underinsured Motorist Coverage in full.

I realize that Underinsured Motorist Coverage may be written for limits as high as the Bodily Injury limits of my policy.

☑ I am selecting reduced Underinsured Motorist Coverage limits of: 15,000 per person and 30,000 per occurrence.

The options indicated above shall apply on this policy and future renewals or replacements of this policy issued to me, until I notify the Company in writing that a change is desired.

✗ 6/20/88
DATE

$ Linda L Garcia
INSURED'S SIGNATURE